UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

State of Minnesota, *by its Attorney General Keith Ellison*,

    Plaintiff,

v.

GoodLeap, LLC, et al.,

    Defendants.

No. 24-cv-1181 (KMM/TNL)

**ORDER**

---

The State of Minnesota ("the State"), filed this case in Hennepin County District Court against four Defendants that market loans to residential consumers for the purchase and installation of solar panels on their homes. Generally, the State alleges that the Defendants violated Minnesota consumer-protection statutes and usury laws by making misrepresentations and engaging in other deceptive conduct while marketing their loans to prospective customers. What the State did not know when it filed and served its complaint was that one of the named Defendants, Dividend Solar Finance, LLC ("Dividend Solar"), had merged with a national bank, Fifth Third Bank ("Fifth Third"), prior to being sued. Fifth Third and Defendant Sunlight Financial LLC removed the case to this Court, asserting that there is federal question jurisdiction. The matter is now before the Court on the State's motion to remand pursuant to 28 U.S.C. § 1447. For the reasons that follow, the State's motion is denied.

# BACKGROUND

## I.      The State's Claims

In its complaint, the State alleges that Defendants Dividend Solar, GoodLeap LLC, Sunlight Financial LLC, and Solar Mosaic LLC deceived consumers when marketing loans for the purchase and installation of solar panels. The State also claims that several Defendants charged interests rates that violate Minnesota's usury laws. According to the State, the Defendants failed to disclose the full costs of financing under their agreements by concealing significant upfront fees they charge to borrowers as though they are are part of the principal balance of the loan. In part, the State claims that Defendants' failure to disclose the nature of those upfront fees violates the Truth-in-Lending Act's ("TILA") requirement that lenders fully disclose an agreement's "finance charge" and "annual percentage rate."

The State also claims that Defendants deceived consumers in other ways that do not involve interpretation or application of TILA standards. For example, the State asserts that Defendants' conduct includes: false statements in sales proposals; failing to disclose that the fee is charged from the beginning of the sale; preventing consumers from learning of lower prices if they don't finance through Defendants; and telling consumers that the proceeds of the loans go exclusively to cover the cost of the solar panel system. *See* Compl. ¶¶ 230–33, 235, 241–42, ECF 1-1; *see also id.* ¶ 259. In addition, Defendants Sunlight Financial and Solar Mosaic allegedly deceive consumers by stating in loan documents that customers must repay loans even under circumstances where they would have a valid legal defense relieving them of the obligation to do so. *Id.* ¶¶ 235, 425. The State also alleges

that the practices of Defendants GoodLeap, Solar Mosaic, and Dividend Solar result in charging interest rates that exceed those permitted by Minnesota's usury laws. *Id.* ¶¶ 263–69.

The State's complaint includes five counts. Counts I through III of the complaint allege that all four Defendants violated the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68–.70 ("MCFA"); the Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43–.48 ("DTPA"); and the False Statement in Advertising Act, Minn. Stat. § 325F.67 ("FSAA"). Count IV alleges that three of the four Defendants (GoodLeap, Sunlight Financial, and Solar Mosaic) violated the Minnesota Regulated Loan Act, Minn. Stat. ch. 56. ("MRLA"). And Count V is a usury claim against GoodLeap, Solar Mosaic, and Dividend Solar, which is brought under the MRLA, Minn. Stat. §§ 56.01, 56.131, 56.18, and the Minnesota Consumer Credit Code, Minn. Stat. § 47.59.

## II.      Dividend Solar and Merger with Fifth Third Bank

Whether Fifth Third properly removed the action based on the State's usury claim against Dividend Solar is a key area of disagreement among the parties. The State alleges that Dividend Solar is wholly owned by DS Global Holdings LLC. In turn, DS Global Holdings is wholly owned by Dividend Solar Inc., which is a Delaware corporation that is distinct from Dividend Solar. Dividend Solar Inc. is wholly owned by Dividend Finance Inc., which is wholly owned by Fifth Third Bank, a national bank. In other words, the complaint asserts that Dividend Solar is a subsidiary of Fifth Third, but it is several rungs down the organizational ladder.

However, these allegations mistake the relationship between Dividend Solar and Fifth Third at the time the State filed its state court complaint on March 8, 2024. Christopher Shroat, a Senior VP at Fifth Third, explains that Fifth Third acquired Dividend Solar in May 2022, at which time it was a subsidiary of the bank. Fifth Third purchased 100% of the equity in Dividend Solar's parent company, Dividend Finance LLC. Shroat Decl. ¶ 3. Dividend Finance LLC continues to exist and remains a subsidiary of Fifth Third. However, in August 2023, Dividend Solar merged with Fifth Third. As a result, Dividend Solar ceased to exist as a separate legal entity. *Id.* ¶¶ 4–5; *see also* Wicht Decl., Ex. A (certificate of merger filed with Delaware Secretary of State). Shroat also explains that Dividend Solar made the loans at issue in the State's complaint after Fifth Third acquired Dividend Solar, but before the August 2023 merger. Shroat Decl. ¶¶ 5, 7, 8. Even before the merger, when Dividend Solar made a loan to a customer, it would immediately sell the loan to Fifth Third, and all payments Minnesota customers made on the loans went directly to Fifth Third. *Id.* ¶¶ 8–15. In sum, when it was a subsidiary of Fifth Third, Dividend Solar made the loans to Minnesota consumers that are at issue in this case. When Dividend Solar merged with Fifth Third, Dividend Solar ceased to exist and Fifth Third became the successor entity. And following the merger, Fifth Third is the only existing entity with an interest in those loans.[1]

---

[1] During the hearing on the motion to remand, counsel for the State conceded that it has no reason to dispute the evidence before the Court regarding the merger and did not contest that Dividend Solar ceased to exist before the State filed its complaint.

Even though the complaint asserts only state law claims and Fifth Third is not a named Defendant,[2] Fifth Third removed the action to federal court on April 5, 2024.[3] In the Notice of Removal, Fifth Third alleged that the complaint includes a claim within the Court's original jurisdiction because the usury claim in Count V is completely preempted by the National Bank Act ("NBA"). In addition, Defendants asserted that the State's statutory claims in Counts I through IV are removable because they necessarily raise a substantial federal issue by each requiring interpretation and application of the TILA.

### III.   Multidistrict Litigation

This case is not the only litigation involving claims against Dividend and Fifth Third arising out of the financing of residential solar power systems. Other plaintiffs have filed putative class actions raising similar claims against Dividend and Fifth Third in several federal district courts, and Dividend and Fifth Third have removed other cases originally filed in state courts around the country to federal courts. On August 2, 2024, plaintiffs in five actions in the District of New Jersey filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") to transfer the related cases to the District of New Jersey for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In re*

---

[2] On March 8, 2024, a process server purported to serve the state court summons and complaint on Dividend Solar Finance LLC by handing them to Joann Solis, a customer service specialist at the Office of the Minnesota Secretary of State. The process server's affidavit of service states that Solis is "an Expressly Authorized agent of said Dividend Solar Finance LLC." ECF 1-1 at 99.

[3] Sunlight Financial jointly filed the Notice of Removal with Dividend Solar. The other Defendants consented to removal.

*Solar Power Deceptive Sales and Financing Litig.*, MDL No. 3128, Doc. 1 (J.P.M.L. Aug. 2, 2024).

Following that motion, the JPML received notice of nineteen related actions pending in nine additional districts. The plaintiffs in some of those cases opposed centralization of the litigation in a single MDL proceeding, or they requested that any coordinated MDL be centralized in their preferred location. Fifth Third and Dividend supported centralization and requested that the MDL be venued in the Southern District of Ohio or the District of Connecticut. *In re Dividend Solar Finance, LLC, and Fifth Third Bank Sales and Lending Practices Litig.*, MDL No. 3128, Doc. 65 at 1 (J.P.M.L. Oct. 3, 2024). On October 3, 2024, the JPML found that these related cases "involve common questions of fact and that centralization in the District of Minnesota will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *Id.* Noting that this action was already pending here, the JPML assigned the MDL to the undersigned District Judge and ordered that potential tag-along actions would be transferred "through the conditional transfer order process." *Id.* at 2–3 & n.3. Although this action is part of the MDL, the pending motion to remand affects only this case and is not impacted by the recent creation of the MDL.

## DISCUSSION

The parties dispute whether Fifth Third properly removed the case because it is not a named defendant and whether the State's non-usury claims are completely preempted by

6

the NBA.[4] They also dispute whether the complaint necessarily raises a substantial federal question because the consumer-protection claims in Counts I–IV depend upon an analysis of the TILA. As explained below, the Court finds that Fifth Third was entitled to remove this case based on complete preemption of the usury claim against Dividend Solar. Accordingly, the Court denies the State's motion to remand.

## I.      Legal Standards

A defendant can properly remove a case to federal district court where "at least one claim falls within the original jurisdiction of the federal court." *Minnesota v. Am. Petrol. Inst.*, 63 F.4th 703, 709 (8th Cir. 2023). A plaintiff may move to remand a case to state court, and if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). As the proponent of removal, the defendant has the burden to show there is subject matter jurisdiction. *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).

None of the Defendants raised diversity jurisdiction under 28 U.S.C. § 1332 as a ground for removal. Other than diversity, another source of original jurisdiction is 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Under § 1331 district courts have "federal question jurisdiction" only when the plaintiff's

---

[4] In the Notice of Removal, Fifth Third explicitly asserted only that the NBA completely preempts the usury claim in Count V of the State's complaint. Because the Court finds that Fifth Third's properly removed the usury claim on the ground of complete preemption, the Court does not today decide the other questions about the propriety of removal, including whether Fifth Third waived complete preemption arguments as to any other claim in the State's pleading and whether any of those other claims is, in fact, completely preempted.

complaint presents a federal question on its face. *Am. Petrol. Inst.*, 63 F.4th at 709. Under the well-pleaded complaint rule, a plaintiff "'may avoid federal jurisdiction by exclusive reliance on state law.'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 483 U.S. 386, 392 (1987)).

Two exceptions to the well-pleaded complaint rule may allow defendants to remove a case even where the complaint asserts only state law claims. *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1066 (8th Cir. 2023). These exceptions apply "when the state law claims (1) are completely preempted by federal law or (2) necessarily raise a substantial, disputed federal question." *Id.* (quotations omitted). Because the Court ultimately concludes that Fifth Third properly removed this case on the ground of complete preemption, the Court discusses only that exception.

## II.   Analysis

### A. Complete Preemption

The complete-preemption exception to the well-pleaded complaint rule is "narrow." *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922 (8th Cir. 2000). It applies where the "preemptive force of certain federal statutes is deemed so extraordinary as to convert complaints purportedly based on the preempted state law into complaints stating federal claims from their inception." *Id*. (quotations omitted); *see Phipps v. F.D.I.C.*, 417 F.3d 1006, 1010 (8th Cir. 2005) (explaining that even when a plaintiff pleads no federal cause

of action in their complaint, federal-question jurisdiction may exist if a federal statute completely preempts the state cause of action).[5]

Under certain circumstances, the National Bank Act is a source of complete preemption allowing a defendant to remove a case asserting only state claims. "National banks are corporate entities chartered not by any State, but by the Comptroller of the Currency of the U.S. Treasury." *Madden v. Midland Funding, LLC*, 786 F.3d 246, 247 n.1 (2nd Cir. 2015) (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006)). "The NBA permits any national banking association to charge interest at the rate allowed by the laws of the state in which the bank is located." *Krispin*, 218 F.3d at 922 (citing 12 U.S.C. § 85[6]). As a result, national banks can charge higher interest rates to customers from other states even when those rates would be unlawful under the other states' usury laws. *Id.* In this way, "state law claims of usury brought against a national bank are completely preempted by the [NBA]." *Id.* (citing *M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 611 (8th Cir. 1991)); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003) (providing that there is "no such thing as a state-law claim of usury against a national

---

[5] Complete preemption is a jurisdictional concept, while ordinary preemption, such as express, conflict, or field preemption, is a defense to liability. *See Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012). Ordinary preemption is an affirmative defense that does not make a complaint removable to federal court. *Am. Petrol. Inst.*, 64 F.4th at 710.

[6] Section 85 states "Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchanges, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located. . . ." 12 U.S.C. § 85. "Section 86 of the NBA provides the exclusive remedy for violations of section 85." *Krispin*, 218 F.3d at 923.

bank"). For the NBA to completely preempt a usury claim, "1) the fee or charge challenged must be 'interest' within the NBA; and 2) the rate of that interest must be at issue." *W. Va. ex rel. McGraw v. JPMorgan Chase & Co.*, 842 F. Supp. 2d 984, 989 (S.D. W. Va. 2012) (citing *Smiley v. Citibank (S. Dak.), N.A.*, 517 U.S. 735, 738 (1996)).[7]

### B. Misnomer and the Real Party Defendant in Interest

Fifth Third argues that the State's usury claim against Dividend Solar is completely preempted by the NBA because, after the August 2023 merger, Dividend Solar ceased to exist and became a part of Fifth Third, and Fifth Third is a national bank. The State does not dispute that a state law usury claim against a national bank is completely preempted by the NBA. Nor does it dispute that Fifth Third could remove a complaint if the pleading asserted a state law usury claim against Fifth Third. And the State concedes that Dividend Solar no longer exists because of its merger with Fifth Third. However, the State disagrees that Fifth Third could properly remove the case to federal court when it is not named as a defendant in the complaint. Accordingly, the question presented by this case is this: can an

---

[7] Congress amended the NBA in 2010 with the passage of the Dodd-Frank Wall Street Reform & Consumer Protection Act. Prior to 2010, operating subsidiaries of national banks and agents of national banks could benefit from NBA preemption as well. *Madden*, 786 F.3d at 250. The 2010 amendments to the NBA state, in part, that "a State consumer financial law shall apply to a subsidiary or affiliate of a national bank … to the same extent that the State consumer financial law applies to any person, corporation, or other entity subject to such law." 12 U.S.C. § 25b(e). Based on the understanding that Dividend Solar was Fifth Third's subsidiary, the State referenced this amendment to the NBA in its briefing. Pl.'s Mem. 27–28, ECF 35. However, the Court does not understand the State to argue that this provision applies now that the State has acknowledged that Dividend Solar no longer exists following its merger with Fifth Third. The State does not point to any authority that would allow a state law usury claim to go forward against a national bank on the ground that loans were made by a national bank's subsidiary, but at the time of suit the subsidiary ceased to exist because of a merger into the bank.

entity claiming to be the real party defendant in interest remove an action in which it is not named as a defendant?

Neither the Supreme Court nor the Eighth Circuit has answered this question. Other courts have reached different conclusions. *Compare La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 97 (2d Cir. 2014) (holding that a real party defendant in interest is entitled to remove an action), *with Sharma v. HIS Asset Loan Obligation Tr. 2007-1 by Deutsche Bank Nat'l Tr. Co.*, 23 F.4th 1167 (9th Cir. 2022) (rejecting *La Russo*), *and Valencia v. Allstate Texas Lloyd's*, 976 F.3d 593, 596 (5th Cir. 2020) ("As a non-party, Allstate Illinois did not have the right to remove the case to federal court."). Naturally, the State relies on the cases that find only a named defendant may remove the action, and Fifth Third relies on cases reaching a different conclusion. In the specific circumstances presented here, where the State's mistake qualifies as a so-called misnomer, the Court finds that *La Russo* supports Fifth Third's removal of the action as the real party defendant in interest.

In *La Russo*, the plaintiff filed a lawsuit alleging that the defendant's tortious conduct had injured her son. She sued "SGU Med.," a medical school in Grenada that her son attended, but SGU Med. was not a legally recognized entity. 747 F.3d at 92, 94–95 (referring to SGU Med. as a "non-juridical entity" and "non-juridical defendant"). "SGU Ltd." claimed to be the "real party defendant in interest." SGU Ltd. owned and operated the medical school. After the plaintiff served SGU Med. through the office of the New York Secretary of State, SGU Ltd. removed the case to federal court. *Id.* The plaintiff moved to

remand the case to state court, but the federal district court denied the motion and then granted SGU Ltd.'s motion to dismiss. *Id.* at 93.

On appeal, the plaintiff argued that because it had not named SGU Ltd. as a defendant, and SGU Ltd. failed to intervene in the state court proceedings, SGU Ltd. had no right to remove the suit to federal court. The Second Circuit rejected that argument, explaining that "the concept of a 'real party defendant in interest' is not only entirely valid, it is an important aspect of removal jurisprudence." 747 F.3d at 97. The *La Russo* court reasoned that if the truly interested defendant "seeks removal, it must act promptly because the 30–day interval in which it is permitted to do so . . . begins when it is 'on notice that the wrong company defendant has been named.'" *Id.* at 96 (quoting *Hillberry v. Wal-Mart Stores East LP*, No. Civ.A.3:05CV–63–H, 2005 WL 1862087 (W.D. Ky. Aug. 3, 2005)).[8]

---

[8] The *La Russo* court pointed to other decisions where courts have approved of removal by a so-called real party defendant in interest. *Id.* at 96; *Hillberry*, 2005 WL 1862087 (named defendant was non-existent entity); *Pioneer Exploration, Ltd. v. Kansas Gas Service Co.,* No. 04–1335, 2004 WL 2931403 (D. Kan. Dec. 17, 2004) (named defendant existed only to license trade name); *M.E. Aslett Corp. v. Crosfield Electronics, Inc.*, No. 86 CIV. 3549, 1987 WL 7023 (S.D.N.Y. Feb. 17, 1987) (explaining that removal could not be denied a real party defendant in interest "merely because plaintiff improperly sued its fictitious trade name"). Within the Eighth Circuit, the Eastern District of Missouri has followed the same approach as *La Russo*. *See Howell v. Forest Pharma., Inc.*, No. 4:15-cv-1138 (CEJ), 2015 WL 5561838, at *2 (E.D. Mo. Sept. 21, 2015) (collecting cases).

Though it does not use the term "misnomer," *La Russo* is essentially a misnomer case, and this is what makes it most useful to the Court here. In the removal context,[9] "misnomer" and "misidentification" cases involve disputes over whether a removal was timely, which is not directly in dispute here. But the difference between the two mistakes matters because, in misnomer cases, real party defendants in interest may lose their opportunity to remove a case from state to federal court if they wait too long to act.

"A misnomer occurs when the correct party is misnamed but served with notice of the suit, while misidentification arises when two separate legal entities actually exist and a plaintiff mistakenly sues the entity with a name similar to that of the correct entity." *Bartell v. Liberty Mut. Pers. Ins. Co.*, No. 1:23-CV-00377-NT, 2024 WL 1090308, at *3 (D. Me. Mar. 13, 2024) (quotations omitted); *see also Kim v. Dyna Flex, Ltd.*, 525 F. Supp. 3d 999, 1003 (E.D. Mo. 2021) (same). In *La Russo*, the plaintiff's mistake was a misnomer. She identified the "non-juridical defendant" by the medical school's name (SGU Med.), but the real party that would be affected by a potential judgment was the entity (SGU Ltd.) that owned and operated the school. 747 F.3d at 96. When SGU Ltd. received the summons and complaint and saw that the plaintiff had essentially sued its trade name, the 30-day clock for removing the action began to run. *Id.* at 97. And the leading district court decision on

---

[9] The term "misnomer" also comes up when a plaintiff seeks to amend the pleadings and have that amendment relate back to the date the original complaint was filed under Rule 15(c). *See Roberts v. Michaels*, 219 F.3d 775, 778 (8th Cir. 2000) ("This misnomer principle is most obviously appropriate in cases where the plaintiff has sued a corporation but misnamed it. ... But the principle has been applied more broadly, for example, to complaints that named a corporation instead of a partnership, a parent corporation instead of a subsidiary, a building instead of its corporate owner, *and a corporation in liquidation instead of its successor*.") (emphasis added) (citations and quotations omitted); *id.* at 778 n.2 (citing cases).

which the *La Russo* court based its holding involved a classic case of "misnomer." *Hillberry*, 2005 WL 1862087, at *2–3 (finding that Wal-Mart Stores East, L.P. properly removed the action as the "real party in interest defendant" when the plaintiff had sued a non-existent entity "styled 'Wal-Mart'").

"Misnomer cases arise in a few different situations. One is where the correct party was served but the complaint named their trade name, a company that did not exist, or their predecessor, so that it was clear the proper defendant understood the suit was against them." *Bartell*, 2024 W 1090308, at *3. In this case, the entity the State named as a Defendant, Dividend Solar Finance LLC, did not exist at the time the complaint was filed and served because of the August 2023 merger. Consequently, the real party defendant in interest is the successor entity, Fifth Third.[10]

In terms of the nature of the mistake made by the plaintiff, this case resembles *Iulanelli v. Lionel LLC*, 183 F. Supp. 2d 962, 968 (E.D. Mich. 2002). There, the court found that a successor corporation lost its right to remove because it did not do so within 30 days of receiving notice of the suit, even though it was not the named defendant. The plaintiff in *Iulanelli* named a predecessor corporation, Lionel Trains Inc., as a defendant in a breach-of-contract suit filed in state court. *Id.* at 963. The plaintiff claimed that he was terminated in violation of an employment contract's "good cause" provision. *Id.* Lionel Trains Inc. said that it had been misnamed, and the real employer was its successor, Lionel LLC. While

---

[10] Through the merger, Fifth Third became "the surviving business entity" and agreed that it could be served with process "for the enforcement of any obligation of Dividend Solar Finance LLC." Wicht Decl., Ex. A.

the case was still in the state court, the plaintiff amended its complaint to add the successor as a defendant. *Id.* Lionel LLC then removed the case to federal court, arguing that the state breach of contract claim was completely preempted by section 301 of the Labor Management Relations Act. *Id.* The district court remanded the case to state court because Lionel LLC waited too long to remove the case. The court found that Lionel LLC should not have waited until it was formally named by an amended pleading, and the 30-day timeline for removal started to run when it was on notice that it was the real party defendant in interest. *Id.* at 964–66.

Following the broad implications of "misnomer" cases like *La Russo* and *Iulanelli*, Fifth Third was on notice that it was the real party defendant in interest when it received the state court summons and complaint. If it had waited too long, it would have lost its ability to remove the case. And because of that requirement for prompt action, Fifth Third was entitled to remove the suit.

The State argues that the Court should disregard cases like *La Russo*, and instead follow the Ninth Circuit's decision in *Sharma*, a case which expressly rejected *La Russo*'s reasoning. 23 F.4th 1167. In *Sharma*, the plaintiffs filed a wrongful foreclosure action in California state court against two named defendants, a trust and a corporation. Deutsche Bank National Trust Company ("DBNTC") was not one of those named defendants. Nevertheless, DBNTC removed the case, arguing that, because it was the trustee for one of the defendants, it was the real party in interest. *Id.* at 1169. The district court denied the plaintiff's motion to remand, relying on *La Russo*, and then then dismissed the plaintiffs' complaint on res judicata grounds. *Id.* at 1168–69. On appeal, the *Sharma* court found that

DBNTC was not entitled to remove because it was not a named defendant in the suit. *Id.* at 1169–73. In disagreeing with *La Russo*, the *Sharma* court explained that the removal statute, 28 U.S.C. § 1441(a), provides that a case may be removed "by the defendant or the defendants," and this language does not allow an entity that has not been named as a defendant in the litigation to remove a case to federal court unless it first intervenes in the state court action. *Id.* at 1170–71.[11] The *Sharma* court also argued that the *La Russo* rule is unworkable and presents operates as a trap for so-called real party defendants in interest. *Id.* at 1172–73.

This Court finds that the fact pattern presented by *Sharma* is distinguishable from the clear misnomer at work in this case. In *Sharma*, the plaintiffs did not accidentally sue a corporation by its trade name, a nonexistent entity, nor a predecessor corporation that had become defunct. In that sense, *Sharma* is not a "misnomer" case at all. Instead, it is a case involving a "misidentification." And in cases involving "misidentification," a non-party's "unilateral action" of removing a case without first intervening in the state court

---

[11] The Eighth Circuit has neither discussed nor cited *Sharma*. However, within the Eighth Circuit, a District of Nebraska court has relied on *Sharma* to hold that a non-party that thinks it is the real party defendant in interest should first intervene or move to join the proceeding as a defendant in the state court if it wishes to remove the case to federal court. *Calderon v. Aldi, Inc.*, No. 8:23cv406, 2023 WL 8183704, at *2 (D. Neb. Nov. 27, 2023). A district court in the Eastern District of Missouri has also approvingly cited *Sharma* to hold that an interested entity that wasn't named as a defendant could not remove a case. *Medcalf v. Manley*, No. 4:23-CV-01181-MTS, 2023 WL 7553832, at *1 (E.D. Mo. Nov. 14, 2023). This Court notes that in *Calderon*, the court found that the plaintiffs had not made a mistake that could be categorized as a misnomer. *Calderon*, 2023 WL 8183704, at *2 ("This is not a simple misnomer."). And in *Medcalf*, though the court did not refer to "misnomer," the plaintiffs named an individual capable of being sued, which the court likened to "misidentification." 2023 WL 7553832, at *1 & n.* ("But FCA US still has not explained what provision of law would provide for it to take 'unilateral action' based on 'such misidentification.'") (quoting *Valencia*, 976 F.3d at 597). Neither case is like this one.

proceedings may be inappropriate. *Valencia*, 976 F.3d at 597. Indeed, in *Valencia*, the Fifth Circuit distinguished the facts at issue from those in typical misnomer scenarios—the plaintiff in *Valencia* sued an existing corporate entity, but a separate legal entity with a very similar name removed the action. *Id.* at 596–97.

The State's mistake in this case—suing a non-existent entity—is not like the misidentification error in *Sharma* or *Valencia*. From the time the process server purported to serve Dividend Solar at the Office of the Minnesota Secretary of State, Fifth Third had notice of the suit and was aware that the State asserted claims based on the conduct of its former subsidiary. As the successor entity to Dividend Solar, Fifth Third knew it was the entity with a real interest in the litigation. Under the misnomer cases, if Fifth Third failed to remove the action within 30 days, it would risk losing its right to remove.[12] And the *La Russo* court's rule recognizes that if the real party defendant in interest is required to act promptly to preserve the ability to remove a case, then it is also permitted to remove the case to federal court without first needing to intervene in the state court proceeding, potentially causing unnecessary delay.

The State's remaining arguments do not change the Court's conclusion, but one merits further discussion here. The State argues that Defendants' assertion that Dividend

---

[12] The Court acknowledges that the *Sharma* court reasonably identified a conflict between, on the one hand, *La Russo*'s finding that the 30-day clock began to run irrespective of whether service had been achieved, and on the other hand, the holding in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) that the thirty-day removal period did not begin to run until a named defendant received formal service. At least one court has suggested, without significant analysis, that "*Murphy* clarifies when the removal period closes[,] [b]ut when a defendant may first remove a case is a different question." *Perez v. ZTE (USA), Inc.*, No. 3:18-cv-2948-B, 2019 WL 1429654, at *2 (N.D. Tex. Mar. 29, 2019).

Solar no longer exists operates only to nullify service. The State suggests that because service was only on a non-existent entity, Fifth Third was never properly served and had no right to remove the action. The Court is not persuaded that questions over the efficacy of process in this case preclude removal here. For starters, in misnomer scenarios where the real party defendant in interest has notice of the suit, courts have held that "[s]ervice of process upon a removing defendant is not a prerequisite to removal." *La Russo*, 747 F.3d at 97 (citing *Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 (5th Cir. 2000) and *City of Ann Arbor Employees' Retirement Sys. v. Gecht*, No. C-06-7453, 2007 WL 760568, at *9 (N.D. Cal. Mar. 9, 2007)). Other courts have, more generally reached the same conclusion. *See Taylor v. Cottrell, Inc.*, No. 4:09CV536 HEA, 2009 WL 1657427, at *2 (E.D. Mo. June 10, 2009) ("[T]he Court declines to require that a removing defendant have received service prior to removal.") (citing cases). In addition, even if service of process was ineffective on Fifth Third, Fifth Third was not the only entity that removed this action. Defendant Sunlight Financial jointly filed the Notice of Removal with Fifth Third, and there is no question regarding the adequacy of the service of that removing Defendant. Sunlight Aff. of Service, ECF 1-1 at 102. And if Sunlight Financial properly removed, nothing precludes the litigants from resolving other issues of service with respect to any other defendant following removal. *See* 28 U.S.C. § 1448.

Accordingly, the Court concludes that even though it was not named as a defendant in the State's complaint, Fifth Third was the real party defendant in interest. As a result, the claims asserted against Dividend Solar are really claims against Fifth Third, and Fifth Third was entitled to remove the action. Finally, because there is no dispute that the usury claim

in Count V is completely preempted by the NBA, Fifth Third's removal was proper. For these reasons, the Court denies the State's motion to remand.

## CONCLUSION AND ORDER

Having concluded that Fifth Third properly removed this case based on the National Bank Act's complete preemption of the State's usury claim in Count V against Fifth Third's former subsidiary, the Court does not resolve the remaining issues briefed by the parties on the motion to remand. The State's motion is denied.

The Court acknowledges that, at the time of the briefing on the motion to remand and at the hearing, the State indicated that if the Court agreed with Fifth Third's removal based on complete preemption of the usury claim, the State would amend its complaint or voluntarily dismiss the usury claim and then seek remand under 28 U.S.C. § 1367. As a result, the State argued that the Court should find that Fifth Third's other NBA complete preemption arguments had been waived and address the application of the *Grable*[13] doctrine with respect to the State's state statutory claims under the MCFA, MDTPA, FSAA, and MRLA. The Court appreciates the State's candid indication of its intentions and its efforts to obtain an efficient resolution of the remaining issues that determine where *this case* should be heard. However, the Court declines to weigh in on those other issues because the status quo has changed since this motion to remand was briefed and argued. Now, in light of the changed circumstances, it is unclear to the Court whether the State will attempt to move forward in the same manner it previously stated it would and renew its

---

[13] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

efforts at remand, or whether the State intends to proceed differently. Therefore, the Court declines to offer an advisory opinion on the remaining issues raised in connection with the motion for remand, which would become necessary to explore only if the state amends its Complaint.

Accordingly, **IT IS HEREBY ORDERED THAT** Plaintiff's motion to remand, ECF 32, is **DENIED**.

Date: October 22, 2024                                    *s/Katherine Menendez*
                                                                              Katherine Menendez
                                                                              United States District Judge